I'm Carrie Adams for the National Treasury Employees Union. We're seeking review of a decision by the Federal Labor Relations Authority. The authority misconstrued an enabling statute that applies to the controller of the currency. It construed that statute mistakenly to preempt a duty to bargain under Title V's bargaining provision. The legal principles here are really undisputed. An agency that has discretion over a condition of employment that isn't controlled by law has to bargain under Title V. What's the relevant agency here? The relevant agency? It's the controller of the currency. Why is it not also the Treasury Department? Well, the Treasury Department has been removed from the pay setting. To some degree, but only to some degree. The reason for my question is as follows. Before the adoption of the current form of 482, we simply looked at Section 481. Correct. And 481 allowed the controller of the currency to set these wages and conditions and so on, subject to approval by the Secretary of Treasury. Yes. Now, if all we had was 481, would you lose? That is to say, solely in the control of currency, subject to approval of the agency. That is to say, excuse me, subject to approval of Treasury. I think you can see where I'm going, which is why you're hesitating. Well, we're saying that that's a moot point, of course. But even though it might be a moot point, what if all we had was 481? Well, without regard to all these other laws, Treasury, I suppose, could set the pay. Why, then, do we not view 482 as a carve-out from 481 in the sense that it specifies that certain discretionary decisions that used to be, when all we had was 481, subject to the approval of the Secretary of the Treasury, are now not subject to the approval of the Secretary of Treasury, but are final with respect to the controller of the currency? So if you combine 481 and 482, some decisions are discretionary, subject to approval by the Secretary of Treasury. Some decisions are simply discretionary in the control of the currency. But none are nondiscretionary. They're all discretionary. The only question is whether there's final approval of the Secretary. Well, that's right. And Congress did not remove the phrase, subject to the approval of the Treasury, from 481. They wrote an entirely new comprehensive statute that said, okay, the discretion set pay, and discretion is presumptively has to be bargained. The discretion lies with the controller of the currency. And so the Treasury Department's out of the picture. Well, it's out of the picture with respect to everything that's been carved out by 482. Right. But isn't it still in the picture with respect to that which has not been carved out by 482 that is covered by 481? Well, I suppose that's true. If you look at this is the appendix to the FLRA's brief. 481 is a two-page statute, and this much of it has to do with setting pay. Right. Whereas 482 that they enacted, the only statute that gives a controller authority to act without the Treasury Department, and it was enacted after the bargaining provisions of Title V came into effect, they wrote an entirely new system. And this is none of this is subject to the Treasury Department. Okay. I got it. And I don't think that where Congress has replaced the system, has set out the new rules. Okay. Controller can act on these issues, has discretion to do certain things. And here are the rules. Set pay this way. And Congress did not delete Treasury from 481. They did not bring that without regard to any law over into 482. On the contrary, they considered that broader preemption language, and they took it out of the bill, and they left just the narrow preemption language without regard to classification and pay, which everybody agrees taking that language itself does not preempt bargaining. It leaves bargaining duty of Title V in place. Plus, in 482, they put in place other limitations that contradict the notion that there's unfettered discretion here by the controller. Additional compensation and benefits they can pay, but only if the other sister agencies do it. And as to the total package, the amount of money the entire package costs, they shall consult with their sister agencies and seek comparability. And that, under clear authority, clear precedent that the authority abides by, that sort of comparability discretion is just discretion. It's not sole and exclusive by definition. And it's very similar to the Fort Stewart discretion, the dictates that in the Supreme Court found that in Fort Stewart, pay is just another condition of employment. You have to bargain over it. And there was a comparability provision there, too, and that the total expense of running the military school should be the same or comparable to the local schools. And they said, well, that's not nondiscretionary. That's subject to bargaining. So in summary, we think that 482, which says notwithstanding anything contrary in 481, is very recent. It is more recent. It is after Title V came into effect. It's the only statute by which the controller acts independently, and hence, the Treasury Department isn't here. And it just does not, cannot be used to overcome the presumption about bargaining, but left the duty of bargaining in place. Do you want to say a final word? Yes. Thank you. We'll hear from the Governor. Good morning, Your Honors. James Blanford for the Federal Labor Relations Authority. I'm splitting my time with Ms. Ellen Warwick, who represents the intervener, the controller of the currency. I think you read together, in a manner to make sense, Sections 481 and 482. The only plausible result is that the controller of the currency is provided with sole and exclusive authority and discretion to set compensation for its employees, free from external constraints, including the constraint of collective bargaining. 481 clearly establishes that authority. It permits the office of controller of the currency to set compensation and other conditions of employment, notwithstanding any laws affecting federal employment, which would include Chapter 71 of Title V, which provides for collective bargaining. The 1989 amendments to Section 482 didn't change that. It's clear that the point of those amendments was to remove the approval authority of the Secretary of the Treasury. There was no intent in the amendments that were made to Section 482 to put any further constraints on the discretion to set compensation. In fact, the whole point was to give as much flexibility as possible to the office of the controller of the currency, like the other financial regulatory agencies, to attract, retain the best possible employees. How do you respond to the argument that 482 contains a provision that directs the controller to consult with other agencies, and that thereby constrains the discretion, and thereby, and you can see the sequence. It requires them to consult with it and to look to comparability as a measure in determining compensation. But it does not require specifically that the compensation provided to employees of the office of the controller of the currency match or identical to those of the FDIC or the Office of Thriftless Supervision or the other agencies. It's simply consult, consider it, but it's not a mandatory requirement. So in that sense, it's not a true constraint on the discretion of the controller of the currency. I think these points have been well made in our brief and in the brief of the controller of the currency. If there are no further questions, we will submit on our brief. Okay. Thank you. May it please the Court. My name is Ellen Warwick, and I represent the intervener in the Office of the Controller of the Currency. The Office of the Controller of the Currency believes that the FLRA correctly ruled that the controller of the currency's long-standing and broad authority under Section 481 of its compensation authority relieves him of the obligation to bargain compensation with the union. The union's argument essentially is that a specific exemption from two provisions of Title V stated in Section 482 negates the controller's authority, broad authority stated in Section 481, but there's nothing either in the plain language or the legislative history of the FLRA amendments that supports the union's view. Rather, the plain language emphasizes that the controller should exercise his preexisting authority independently from the Treasury Department, and it also confirms and reinforces his ability to exercise his preexisting authority in a manner consistent with that authority. And historically, the Treasury Department had been constraining the OCC's wage schedules to the levels established in the two provisions stated in Section 482. So this provision was necessary to confirm the Office of the Controller's ability to set the compensation of OCC employees without regard to any other law as stated in Section 481. The provision pertaining to the controller's ability to set additional compensation and benefits, if those benefits are then being provided by another bank regulatory agency, does not in any way impose a limitation on the controller's sole and exclusive authority to set the compensation of OCC employees. Rather, that provision was to reinforce the controller's preexisting authority to provide additional pay and benefits. You have covered in your brief, and is there anything that's not, you think, covered in your brief adequately? Your Honor, we believe that we have addressed all of the relevant issues in our brief. Okay. Thank you. And if the Court has no further questions of us, we would submit on our briefs and would request that the Court affirm the FLRA's decision. Thank you. Thank you. Just one point, Your Honor, which is that the duty to consult with the sister agencies, the FDIC has that duty also, thanks to the same 1989 provision. And that doesn't do anything except give the agencies discretion, discretion negotiable. It doesn't take it out of the duty to bargain. Well, it's not really constrained. All it says is that you have to, you have the option of consulting and considering. Right. It's really not a constraint, is it? They can't use it to flip it and say that that grants them sole and exclusive discretion. But isn't precisely this clause in the statute that the D.C. Circuit construed in the AFGE case, and it didn't make any difference to the D.C. Circuit as it decided that case. Now, I understand that as to this particular statute, there's a lot of the D.C. Circuit case that's dictum. But, in fact, on this point as to the direction to consult with other agencies, that provision was in their statute as well, and they just blew right past it. They did, which is strange in light of what the Supreme Court said about the comparable pay in the Fort Stewart case, which, of course, would dictate. But even Judge Wald, who dissented, did not dissent on that ground. She dissented on the difference between fix and pay. Right. Well, no, the primary point, and Judge Wald certainly agree, is that without regard to Title V pay, not without regard to Title V bargaining, and that's what they need to overcome the presumption. Thank you. Thank you. All right. Thank you very much. The case is signed and will stand submitted. We are adjourned.
judges: Kozinski, W. Fletcher, Holland